UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

United States Courts
Southern District of Texas
FILED

JAN 1 6 2007

Michael N. Milby, Clerk of Court

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. G-06-15-001 |
| § | |
| HILLMAN SHRIMP AND OYSTER CO.§ | |
| Defendant. § | |

## PLEA AGREEMENT

The United States of America, by and through Donald J. DeGabrielle, Jr., United States Attorney for the Southern District of Texas and Jay Hileman, Assistant United States Attorney, and the defendant, Hillman Shrimp and Oyster Co., and the defendant's counsel Thomas M. Henderson, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1. The defendant agrees to plead guilty to Count One of the Indictment and to pay a fine of $500,000. Count One charges defendant with conspiracy to Harbor Illegal Aliens in violation of Title 18, United States Code, Section 371. The defendant, by entering this plea agrees that he/she is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt. The defendant agrees that this Agreement will be

1

executed by an authorized representative.

## Punishment Range

2.      The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 371, is a term of probation of one to five years, and a fine of not more than $500,000.

## Mandatory Special Assessment

3.      Pursuant to Title 18, U.S.C. § 3013(a)(2)(B), immediately after sentencing, defendant will pay to the Clerk of the United States District Court a special assessment in the amount of four hundred dollars ($400.00) per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Fine and Reimbursement

4.      Defendant understands that under the Sentencing Guidelines, the Court is permitted to order the defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any is ordered.

5.      Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately, and defendant will not attempt to avoid or delay payment.

6.      Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) prior to sentencing if he/she is requested to do

so. In the event that the Court imposes a fine or orders the payment of restitution as part of the Defendant's sentence, the Defendant shall make complete financial disclosure by truthfully executing a sworn financial statement immediately following his/her sentencing.

## Waiver of Appeal

7. Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined on any grounds set forth in Title 18 U.S.C. § 3742. Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding, including but not limited to Title 28, U.S.C. §§ 1651, 2241 and 2255.

The defendant further waives any rights under Title 28, U.S.C., § 2241 to challenge the manner in which the sentence is executed or the legality of the defendant's detention. In exchange for the Agreement with the United States, Defendant waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to any prosecution that is not time barred on the date that this Agreement is signed, in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or (c) Defendant's plea is later withdrawn.

3

8. In agreeing to these waivers, defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction, not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the <u>United States Sentencing Guidelines</u> are "effectively advisory" to the Court. *United States v. Booker*, 125 S.Ct. 738 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9. The Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

10. The United States agrees to each of the following:

(a) At the time of sentencing, the United States agrees not to oppose defendant's anticipated request to the Court and the United States Probation Office that he/she receive a two (2) level downward adjustment pursuant to U.S.S.G. Section 3E1.1(a) should the defendant accept responsibility as contemplated by the Sentencing Guidelines;

4

(b)   If the defendant qualifies for an adjustment under U.S.S.G. Section 3E1.1(a), the United States agrees not to oppose the defendant's request for an additional one level departure based on the timeliness of the plea or the expeditious manner in which the defendant provided complete information regarding his/her role in the offense if the defendant's offense level is 16 or greater.

(c)   The United States agrees not to request an upward departure.

(d)   With the exception of tax offenses, bankruptcy frauds, internal security offenses and air piracy offenses, none of which the United States is aware exist, it will not further criminally prosecute the defendant.

### United States' Non-Waiver of Appeal

11.   The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a)   to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)   to set forth or dispute sentencing factors or facts material to sentencing;

(c)   to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office; and,

(d)   to file a pleading relating to these issues, in accordance with U.S.S.G. Section 6A1.2 and Title 18, U.S.C.§ 3553(a).

(e)   to recommend that the defendant be ordered to pay a fine in the amount of $500,000.

### Sentence Determination

12.   Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well

as the provisions of Title 18, U.S.C. § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

13. Defendant represents to the Court that he/she is satisfied that his/her attorney has rendered effective assistance. Defendant understands that by entering into this agreement, he/she surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> (a) If defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States, and the court all agree.
>
> (b) At a trial, the United States would be required to present witnesses and other evidence against the defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-

6

examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court.

(c)　At a trial, defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, he/she could testify on his/her own behalf.

### Factual Basis for Guilty Plea

14.　Defendant is pleading guilty because he/she is guilty of the charges contained in Count One of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish the Defendant's guilt:

Hillman Shrimp and Oyster Co. (HSO) is a corporation incorporated under the laws of the State of Texas. It is a major supplier of Gulf Coast oysters and shrimp. HSO has seafood processing facilities in Dickinson, Texas and Port Lavaca, Texas. HSO employs seasonal workers at both facilities. Clifford Hillman is the owner of HSO. Steve Taylor is the manager of the HSO Dickinson facility. Wendy Taylor is the Human Resources manager for HSO. Her office is located in the Dickinson facility. Antonio Ramos Gonzalez is a manager for HSO designated by HSO as its agent to submit H2-B visa applications for alien temporary workers at the United States Consulate General in Monterrey Mexico. Derenda Campbell is employed by HSO as a clerk in human resources at the Dickinson, Texas facility.

The non-agricultural H2-B visa is a non-immigrant visa designated for aliens who will be employed in a non-agricultural position, which is seasonal, intermittent or a one-time occurrence.

7

By law, the H2-B non-agricultural alien temporary worker is not to displace United States citizen workers capable of performing the service or labor and should not adversely affect the wages and working conditions of United States citizen workers.

To obtain H2-B visas for its alien temporary workers, an employer first files a Form ETA 750 with the United States Department of Labor seeking a certification from that department that there are no United States citizens or lawful workers reasonably available to fill the job and that the wages offered will not adversely effect the local labor market. After the labor certification is granted, the employer files the H2-B visa petition with the Immigration and Naturalization Service (INS) or its successor, the Department of Homeland Security Citizenship and Immigration Services (CIS), on a Form I-129. On the Form I-129, the employer lists the individual alien beneficiaries for whom the employer seeks the H2-B visa.

After the visa petition is granted by the INS or CIS, the alien beneficiary submits a visa application to the United States Consulate General in his/her native country on a form DS-156. This form is often prepared by the employer or the employer's representative. The DS-156 contains blocks in which the visa applicant provides biographical data and answers questions concerning his/her eligibility for the visa. One of the most important questions is found at Block 38 of that form. It asks "Have you ever violated the terms of a U.S. visa, or been unlawfully present in, or deported from, the United States?"

To assist United States employers of temporary alien workers under the H2-B visa program, the United States Consulate General in Monterrey, Mexico conducts periodic round table discussions where the employers or their representatives are advised on the proper way to apply for the H2-B visas, recruit workers and the proper employment of alien workers under the program.

8

The Employment Eligibility Verification form (Form I-9) is a document which a prospective employee fills out to show that he/she is authorized to be employed in the United States. At the same time, the prospective employee presents to the employer documents which establish that employee's identity and authorization to be employed. The employer examines the documents submitted by the prospective employee and certifies on the I-9 form that the document(s) appear to be genuine, that they relate to the employee and that the employee is eligible to work in the United States.

Among the documents presented by the prospective employee during the process of filling out the Form I-9 to establish the individual's identity are a drivers license or identity card issued by a state containing a picture of the individual. In Texas, these documents are issued by the Texas Department of Public Safety. Identification cards purportedly issued by the "Texas Department of Identification" or other alleged agencies are not validly issued by the State of Texas and are patently invalid on their face because no such agencies exist.

On or about October 22, 2002, Eduardo Herrera Del Angel (Herrera) was employed by HSO as an Oyster House Day worker. He was authorized to be employed from October 21, 2002 to May 31, 2003 pursuant to a H2-B visa. On or about October 22, 2002, Herrera executed a form I-9. Among the documents he presented was his passport with the H2-B visa. An HSO employee certified the I-9 form. After the period of employment authorized by the H2-B visa expired, Herrera continued to work for HSO under the assumed identity of Luis Garza. On or about May 28, 2003, Herrera executed a form I-9 using the Luis Garza identity. He presented a counterfeit Social Security Card and an identification card purportedly issued by the "Texas Department of Identification". An HSO employee certified that she examined the documents presented by the employee and that they

9

appeared to be genuine. On or about October 22, 2003, **Antonio Ramos Gonzalez**, on behalf of HSO, prepared and submitted to the American Consulate General in Monterrey, Mexico an application (Department of State Form DS-156) seeking the issuance of a H2-B visa for Herrera. To the question in Block 38 of that form which asked "Have you ever violated the terms of a U.S. visa, or been unlawfully present in, or deported from, the United States?", the response block was marked "no". On or about October 28, 2003, Herrera was employed by HSO as an Oyster House Day worker using the Luis Garza identity. He was authorized to be employed from October 27, 2003 to June 30, 2004 pursuant to a H2-B visa. On or about October 28, 2003, Herrera executed a form I-9. Among the documents he presented was his passport with the H2-B visa. An HSO employee certified the I-9 form.

### Jose Manuel Luna

On or about October 22, 2002, Jose Manuel Luna (Luna) was employed by HSO as an Oyster House Day lead man. He was authorized to be employed from October 21, 2002 to May 31, 2003 pursuant to a H2-B visa. On or about October 22, 2002, Luna executed a form I-9. Among the documents he presented was a valid Texas Department of Public Safety Identification Card, a valid Social Security Card and his passport with the H2-B visa. An HSO employee certified the I-9 form. After the period of employment authorized by the H2-B visa expired, Luna continued to work for HSO under the assumed identity of Jose C. Gallegos. On or about May 28, 2003, Luna executed a form I-9 using the Jose Gallegos identity. He presented a counterfeit Social Security Card and an identification card purportedly issued by the "Texas Department of Identification". An HSO employee certified that she examined the documents presented by the employee and that they appeared to be genuine. On or about October 22, 2003, **Antonio Ramos Gonzalez**, on behalf of

10

HSO, prepared and submitted to the American Consulate General in Monterrey, Mexico an application (Department of State Form DS-156) seeking the issuance of a H2-B visa for Luna. To the question in Block 38 of that form which asked "Have you ever violated the terms of a U.S. visa, or been unlawfully present in, or deported from, the United States?", the response block was marked "no". On or about October 28, 2003, Luna was employed by HSO as an Oyster House Day lead man using the Jose Gallegos identity. He was authorized to be employed from October 27, 2003 to June 30, 2004 pursuant to a H2-B visa. On or about October 28, 2003, Luna executed a form I-9. Among the documents he presented was a valid Texas Department of Public Safety Identification Card, a valid Social Security Card and his passport with the H2-B visa. An HSO employee certified the I-9 form.

### Jorge Valente Jaramillo

On or about October 22, 2002, Jorge Valente Jaramillo (Jaramillo) was employed by HSO as an Oyster House Day worker. He was authorized to be employed from October 21, 2002 to May 31, 2003 pursuant to a H2-B visa. On or about October 22, 2002, Jaramillo executed a form I-9. Among the documents he presented were a valid Texas Department of Public Safety Identification Card, a valid Social Security Card and his passport with the H2-B visa. An HSO employee certified the I-9 form. After the period of employment authorized by the H2-B visa expired, Jaramillo continued to work for HSO under the assumed the identity of Jesus Gomes. On or about May 28, 2003, Jaramillo executed a form I-9 using the Jesus Gomes identity. He presented a counterfeit Social Security Card and an identification card purportedly issued by the "Texas Department of Identification". An HSO employee certified that she examined the documents presented by the employee and that they appeared to be genuine. On or about October 22, 2003, **Antonio Ramos**

11

**Gonzalez**, on behalf of HSO, prepared and submitted to the American Consulate General in Monterrey, Mexico an application (Department of State Form DS-156) seeking the issuance of a H2-B visa for Jaramillo. To the question in Block 38 of that form which asked "Have you ever violated the terms of a U.S. visa, or been unlawfully present in, or deported from, the United States?", the response block was marked "no". On or about October 28, 2003, Jaramillo was employed by HSO as an Oyster House Day-Step-up Lead man using the Jesus Gomes identity. He was authorized to be employed from October 27, 2003 to June 30 2004 pursuant to a H2-B visa. On or about October 28, 2003, Jaramillo executed a form I-9. Among the documents he presented were a valid Texas Department of Public Safety Identification Card, a valid Social Security Card and his passport with the H2-B visa. An HSO employee certified the I-9 form.

### Julia De Leon Miranda

On or about December 10, 2002, Julia De Leon Miranda (Miranda) was employed by HSO as an IQF Day worker. She was authorized to be employed from December 9, 2002 to May 31, 2003 pursuant to a H2-B visa. On or about December 10, 2002, Miranda executed a form I-9. Among the documents she presented was her passport with the H2-B visa. An HSO employee certified the I-9 form. After the period of employment authorized by the H2-B visa expired, Miranda continued to work for HSO under the assumed the identity of Julie Reyes. On or about May 28, 2003, Miranda executed a form I-9 using the Julie Reyes identity. She presented a counterfeit Social Security Card and an identification card purportedly issued by the "Texas Department of Identification". An HSO employee certified that she examined the documents presented by the employee and that they appeared to be genuine. On or about October 28, 2003, Miranda was employed by HSO as an Oyster House Day worker using the Julie Reyes identity. She was authorized to be employed from October

12

27, 2003 to June 30 2004 pursuant to a H2-B visa. On or about October 28, 2003, Miranda executed a form I-9. Among the documents she presented were a valid Texas Department of Public Safety Identification Card, a valid Social Security Card and her passport with the H2-B visa. An HSO employee certified the I-9 form.

Periodically, the Social Security Administration and the Internal Revenue Service send employers a notification that the Social Security numbers listed for certain employees on the Wage and Tax Statement form (Internal Revenue Service (IRS) Form W-2) that the employer submitted for the employee did not match the Social Security Account Number assigned to that individual.

During the period from 1999 to 2004, HSO maintained a binder in the human resource office of the Dickinson, Texas facility which was titled Emply # Emply S.S. The binder had dividers with tabs for: Emply #; Bad SS by #; Bad SS by SS; Bad SS by Name.

During the period from 2002 to 2004, HSO maintained in the human resources office of the Dickinson, Texas facility a binder titled "Bad SS #s". The binder contained a list of employees and their employee number. Employee names marked with a "B" indicated a bad Social Security number.

During the period from 2002 to 2004, HSO maintained documents in the office of the Port Lavaca, Texas facility. These documents included lists of employees with their employee number, and Social Security number. One list was annotated "Shucker SS # Bad Report 2003-04". The list also contained the note "changed social = needs to change whole identity". Another list is annotated "Maria use this list to check socials to prevent duplicating employees." Signed by an HSO employee.

13

On or about October 28, 2003, a facsimile was sent to an employee in the HSO Port Lavaca, Texas facility from the HSO Dickinson, Texas facility. The cover sheet advised "these people have bad Social Security #s". Attached was a list of employees with employee number and Social Security numbers. The list bears the annotation "changed social = needs to change whole identity".

For 2000, the Social Security Administration(SSA) notified HSO that 329 of the employee social security numbers they submitted did not match the names the SSA had that coincided with that number. For 2001, the Social Security Administration(SSA) notified HSO that 210 of the employee social security numbers they submitted did not match the names the SSA had that coincided with that number. For 2002, the Social Security Administration(SSA) notified HSO that 189 of the employee social security numbers they submitted did not match the names the SSA had that coincided with that number. For 2003, the Social Security Administration(SSA) notified HSO that 167 of the employee social security numbers they submitted did not match the names the SSA had that coincided with that number.

On June 25, 2004 a search warrant was executed at the HSO plant in Dickinson, Texas. Twenty-one illegal aliens were found on the property.

### Breach of Plea Agreement

15. If defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and the defendant's plea and sentence will stand. If at any time defendant retains, conceals or disposes of assets in violation of this plea agreement, or if defendant

knowingly withholds evidence or is otherwise not completely truthful with the United States, then may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

16. Whether the defendant has breached any provision of this plea agreement shall be determined solely by the United States through the United States Attorney's Office, whose judgment in that regard is final.

## Complete Agreement

17. This written plea agreement, including the attached addendum of defendant and his/her attorney, constitutes the complete plea agreement between the United States, defendant and his/her counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

18. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Galveston, Texas, on ___January 16___, 2007.

_____
Defendant

15

Subscribed and sworn to before me on _January 16_, 2007.

MICHAEL N. MILBY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

DONALD J, DeGABRIELLE, JR.
UNITED STATES ATTORNEY

By: _____     _____
Jay Hileman                          Thomas M. Henderson
Assistant United States Attorney     Attorney for Defendant
Southern District of Texas           (713)552-1940
Telephone: (713) 567-9000
Facsimile: (713) 718-3300

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | |
| § | CRIMINAL NO. G-06-15-001 |
| HILLMAN SHRIMP AND OYSTER CO.§ | |
| Defendant. § | |

**PLEA AGREEMENT - ADDENDUM**

I have fully explained to defendant his/her rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____   1-16-2007
Attorney for Defendant            Date

I have consulted with my attorney and fully understand all my rights with respect to

17

the indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____      Jan 16, 2007
Defendant                             Date